394 So.2d 782 (1981)
Sol KAPLAN et al.
v.
UNIVERSITY LAKE CORP. et al.
GUARANTY SAVINGS ASSURANCE COMPANY
v.
NATIONAL AMERICAN BANK OF NEW ORLEANS as Executor of the Succession of Seymour Weiss.
Nos. 11934, 11935.
Court of Appeal of Louisiana, Fourth Circuit.
February 5, 1981.
*783 Avant, Wall, Thomas, Riche & Falcon, Floyd J. Falcon, Jr., T. A., Baton Rouge, for Guaranty Savings Assurance Co., plaintiffs-appellants.
Stewart & Preis, Ashton L. Stewart, Baton Rouge, Burke & Mayer, Charles Mayer, New Orleans, for National American Bank of New Orleans, As Executor of The Succession of Seymour Weiss, defendant-appellee.
Before SAMUEL, GULOTTA and CHEHARDY, JJ.
GULOTTA, Judge.
In these consolidated suits, Guaranty Savings Assurance Company (G.S.A.) appeals from a judgment enjoining its execution of a Writ of Fieri Facias and a garnishment directed against the National American Bank of New Orleans as executor for the Succession of Seymour Weiss,[1] and also from a judgment, in a separate proceeding, maintaining an exception of lis pendens dismissing G.S.A.'s separate suit for the proceeds of a judicial sale. We affirm the judgment granting the preliminary injunction in one of the two consolidated suits and reverse the judgment maintaining the exception of lis pendens.

BACKGROUND
University Lake Corporation borrowed funds from the American Bank for the purchase of 15.19 acres of land in East Baton Rouge Parish. The loan was evidenced by a $144,000.00 hand note and secured by a collateral mortgage note and mortgage. The note was apparently pledged to the bank. Thereafter, on June 24, 1966, Seymour Weiss purchased the hand note and collateral mortgage. G.S.A. then purchased the property from University Lake on June 15, 1971 and assumed the mortgages, judgments and liens extant against the property. Following default on the notes on November 15, 1974, suit was filed by Kaplan and the National American Bank (the Bank), as executors of the Succession of Seymour Weiss. A judgment was rendered in favor of the executor and against University Lake Corporation, International Speedways, Inc. and Guaranty Savings Assurance Company, in solido, in the sum of $132,000.00 and enforcement of the collateral mortgage bearing against the property *784 was ordered. This judgment was rendered on June 6, 1978. Only G.S.A. took a devolutive appeal from that judgment. Pending the appeal, in satisfaction of the judgment, the property owned by G.S.A. was seized and sold for the sum of $242,458.18.
The Louisiana Supreme Court in Kaplan v. University Lake Corp., 381 So.2d 385 (La.1979), reversing the trial court's judgment, held that the collateral mortgage note bearing against G.S.A.'s property had prescribed and the mortgage was unenforceable. In the original Supreme Court opinion, the court had concluded that the hand note and the original obligation which G.S.A. assumed in its act of sale had "legal validity." However, on rehearing, the Supreme Court set aside that part of its original holding that had made G.S.A. liable upon the hand note and exonerated G.S.A. from any liability. The effect of the Supreme Court decision, on rehearing, is that the mortgage is unenforceable and G.S.A. is not liable either under the mortgage or under the hand note. Unfortunately, however, at the time of the rendition of the Supreme Court judgment reversing the trial court's judgment, G.S.A.'s property had been sold in execution of the trial court's decree.
Following the Supreme Court judgment, G.S.A. in one of the two consolidated suits, now before us on appeal, petitioned the Civil District Court in New Orleans to make the Supreme Court judgment executory in Orleans Parish,[2] and sought a fifa and garnishment of funds in possession of National American Bank belonging to the Succession of Weiss in an amount to satisfy payment to G.S.A. of the $242,458.18 realized from the seizure and sale of the property. At this point G.S.A. had not filed suit against the Weiss succession to recover the amount realized from the sale but sought to execute against the National American Bank as executor solely on the basis of the Supreme Court's judgment annulling and setting aside the trial court's judgment.
G.S.A.'s petition for garnishment against National American Bank as executor of the Weiss' succession was met by a petition for injunctive relief filed by the Bank. The trial judge on May 7, 1980 enjoined G.S.A. and the sheriff for the Parish of Orleans from proceeding with the execution with a Writ of Fieri Facias and revoked the garnishment against the Bank. In written reasons for judgment the trial judge stated:
"Guaranty Savings Assurance Company must proceed to obtain a money judgment against National American Bank of New Orleans, as executor of the Succession of Seymour Weiss, for a specific amount before they can proceed by Writ of Fieri Facias and garnishment."[3]
G.S.A. devolutively appealed from that judgment. This appeal is one of the two consolidated appeals now before us.
Two days following the trial court's judgment revoking the garnishment and enjoining the execution of the fifa, G.S.A., in a separate suit, apparently in response to the reasons for judgment assigned in the earlier suit, filed a petition against National American Bank as executor for the sum of $242,-458.18, the proceeds of the sheriff's sale. A declinatory exception of Lis Pendens was maintained in the trial court and G.S.A.'s suit was dismissed. In written reasons the trial judge stated, in pertinent part,
"... Considering the facts and evolution of this matter, this court believes that Guaranty is entitled to recover these proceeds by virtue of the Supreme Court's Judgment. A bond in an amount sufficient has been posted by the Executor in the garnishment proceedings to support the injunction. That matter is on appeal to the Fourth Circuit.
The pendency of that proceeding, and the existence of a sufficient bond, satisfied the Court that the Exception should be maintained in order to avoid a multiplicity of suits." *785 G.S.A. has appealed from that judgment. This appeal is the second of the two consolidated appeals now before us.
Claiming the judgments rendered by two different trial judges are contradictory, G.S.A. seeks relief from either or both of those judgments.
APPEAL FROM JUDGMENT ENJOINING EXECUTION OF FIFA AND REVOKING GARNISHMENT
At the outset, we find merit in the Bank's argument that G.S.A. is required to obtain a judgment against the Bank as executor in the amount of $242,458.18 before a Writ of Fieri Facias and garnishment can be issued. We do not interpret, as claimed by G.S.A., that the Supreme Court judgment can serve as the basis for the issuance of a fifa and garnishment without the filing of a separate suit and obtaining a judgment for the amount claimed. The Supreme Court decree did not adjudge G.S.A. as a creditor but merely opened the door for the filing of a suit by G.S.A. to obtain a judgment for the amounts claimed.
LSA-C.C.P. art. 2252 provides:
"A judgment creditor may proceed with the execution of a judgment only after the delay for a suspensive appeal therefrom has elapsed."
Footnote "d" under this Codal provision states:
"Where property is sold under a writ of fieri facias and the judgment is subsequently reversed after a devolutive appeal, the validity of the sale is not affected by subsequent reversal of the judgment, and the defendant-appellant's only remedy is to sue the original judgment creditor for the return of the price for which the property was sold. Bomarito v. Barnett Furniture Co., 177 La. 1010, 150 So. 2 (1933); State v. Mutual Inv. Co., 214 La. 356, 37 So.2d 817 (1948) ...." (Emphasis added)
See also, Lisi Realty, Inc. v. Plaisance, 306 So.2d 920 (La.App. 1st Cir. 1974), writ denied, 310 So.2d 640 (1975) where our brothers on the First Circuit cited with approval sub-paragraph "d" of the official revision comments under LSA-C.C.P. art. 2252. See also, Jackson v. D'Aubin, 316 So.2d 476 (La. App. 1st Cir. 1975).
Based on the above, we conclude the trial judge properly enjoined G.S.A. from proceeding with the execution of the Writ of Fieri Facias and properly revoked the garnishment.

APPEAL FROM JUDGMENT MAINTAINING EXCEPTION OF LIS PENDENS
In support of the trial court's judgment upholding the exception of lis pendens, the Bank argues that at the time G.S.A. filed its suit in Orleans Parish for the sale proceeds, two other suits by G.S.A. against the Bank on the same cause of action were pending in Louisiana courts. According to the Bank, the first suit was filed in East Baton Rouge Parish by G.S.A. against J. Al Amiss (the parish sheriff), the Bank (as executor of Weiss' estate) and John Doe, (the then unknown vendee of the property at the sheriff's sale) for $1,323,000.00 in damages. The second-pending suit is that filed by G.S.A. in Orleans Parish and consolidated on this appeal to make the Supreme Court judgment in Kaplan v. University Lake, supra, executory and to enforce it by a Writ of Fifa. Because we find merit to G.S.A.'s argument that these two suits assert causes of action different from that in the third-filed suit for the sale proceeds, we conclude the exception of lis pendens should have been dismissed.
LSA-C.C.P. art. 531 provides:
"When two or more suits are pending in a Louisiana court or courts on the same cause of action, between the same parties in the same capacities, and having the same object, the defendant may have all but the first suit dismissed by excepting thereto as provided in Article 925. When the defendant does not so except, the plaintiff may continue the prosecution of any of the suits, but the first final judgment rendered shall be conclusive of all."
An exception of lis pendens, therefore, is properly maintained where the suits are 1) *786 between the same parties in the same capacities; 2) for the same object; and, 3) on the same cause of action. In the instant appeal, the cases involve the same parties in their same capacities but have different objects and involve different causes of action.
The first-filed suit by G.S.A. against Sheriff Amiss is on an entirely different cause of action from its suit against the Bank for the proceeds of the sale. Our examination of the petition in the Amiss suit, a copy of which is in the record before us, discloses that the Amiss action was filed prior to the judicial sale. Amiss is named as the principal defendant and the Bank is alleged to have acted in concert with him. The then unknown vendee of the property at the judicial sale is also made a party defendant. The allegations are that the judicial sale was improperly advertised and the property improperly appraised. The petition prays that the sale be declared a nullity or, alternatively, that $1,323,000.00 damages be paid by Amiss and the Bank, or, alternatively, that G.S.A. be awarded the sale proceeds as part of the damages.
In the second-filed suit, G.S.A. seeks to make the Supreme Court's judgment in Kaplan v. University Lake, supra, executory and also seeks to execute on that judgment.
On the other hand, the third-filed suit (in which the lis pendens was maintained) for the sale proceeds in the amount of $242,-458.18 is not against Amiss or the vendee of the property but only against the Bank. It is a post-sale action based not on advertisement irregularities but on the illegal seizure and sale of the property by the Bank while G.S.A.'s devolutive appeal from the foreclosure was pending. It also does not seek execution of a judgment as does the second-filed suit.
Clearly, the parties and the causes of action involved in these three suits are not the same. In Willswood Plantation, Inc. v. Foret, 314 So.2d 409 (La.App. 4th Cir. 1975), writ denied, 320 So.2d 553 (La.1975), we stated that mere identity of issues is not sufficient to support a plea of lis pendens. The causes of action and the object of the suits must be the same. Although some of the issues in our cases may be the same, nonetheless the objects and causes of actions are different. Accordingly, we cannot conclude that the exception of lis pendens was properly maintained.
In brief and in oral argument, the Bank contends that upholding the lis pendens exception was proper since none of G.S.A.'s three suits asserts a cause of action and all are "identical" in this respect. In support of this contention the Bank cites LSA-C.C.P. art. 3741[4] and argues that under the pact de non alienando of its mortgage it could foreclose against the mortgaged property in execution of its judgment against University Lake, the original debtor, "... as though it was still owned by the original debtor and in his possession." The Bank contends that G.S.A. as a third party possessor has no cause of action arising from the judicial sale since the foreclosure and sale of the property were in execution of the Bank's judgment against University Lake. The Bank further argues that Kaplan v. University Lake, supra, has no bearing on our case since the Kaplan decision only dealt with G.S.A.'s liability on the hand and mortgage notes and not with the Bank's right to enforce the mortgage against University Lake. We disagree.
The Bank's argument concerning the pact de non alienando presupposes that a valid mortgage existed. The Supreme Court in Kaplan v. University Lake, supra, on G.S. A.'s appeal from a judgment in favor of the Bank and against G.S.A., University Lake, and International Speedways, Inc., held that the mortgage was unenforceable because the collateral mortgage note had prescribed. As stated by the Supreme Court:

*787 "We find and hold, therefore, that upon prescription of the collateral mortgage note, there remained no outstanding mortgage against subject property. Consequently, the mortgage herein sought to be enforced was not extant against the property on the date of G.S.A.'s purchase." Kaplan v. University lake, supra, at page 391.
In view of this clear language, the Bank as executor of Weiss' estate had no mortgage to enforce against either University Lake or G.S.A. when it foreclosed and brought about the judicial sale. Without a valid mortgage, LSA-C.C.P. art. 3741 does not apply. It is clear to us that G.S.A. is the owner of the property that has been illegally seized and sold by the Bank pursuant to a mortgage that was ultimately determined invalid by the Supreme Court.
We point out further that the Bank's argument concerning the pact de non alienando really addresses itself to an exception of no cause of action rather than an exception of lis pendens. Nonetheless, because the Bank's arguments were raised in connection with the exception of lis pendens, we have considered them as raised.[5]
Although we reverse and set aside the judgment maintaining the exception of lis pendens, we note that the action of the trial court has had the beneficial effect of holding these matters in status quo until such time as this court could rule on these appeals.

DECREE
Having so concluded, we affirm in No. 11934 of the docket of this court, Sol Kaplan, et al. v. University Lake Corporation, et al., the judgment of the trial court that enjoins G.S.A. from proceeding with the execution of the Writ of Fieri Facias and revokes the garnishment against the National American Bank of New Orleans as executor of the Succession of Seymour Weiss. Costs to be paid in this matter by Guaranty Savings Assurance Company.
In No. 11935, Guaranty Savings Assurance Company v. National American Bank of New Orleans As Executor of The Succession of Seymour Weiss, we reverse and set aside the judgment of the trial court maintaining the exception of Lis Pendens and dismissing Guaranty Savings Assurance Company's suit. We remand this matter to the trial court for further proceedings consistent herewith. Costs in this matter to be paid by the National American Bank of New Orleans as Executor of the Succession of Seymour Weiss. Costs incurred in future proceedings to await the outcome of litigation.
JUDGMENT ENJOINING EXECUTION AFFIRMED.
JUDGMENT MAINTAINING LIS PENDENS REVERSED.
REMANDED.
NOTES
[1] Sol Kaplan, one of the plaintiffs in this suit, also is an executor of the Succession of Seymour Weiss along with the National American Bank.
[2] The transactions and property, as well as the earlier litigation involving these parties and referred to hereinabove, occurred in the Parish of East Baton Rouge.
[3] An amended judgment signed by the trial judge on May 8, 1980 ordered the National American Bank as executor to post a bond in the amount of $243,000.00.
[4] LSA-C.C.P. art. 3741 provides:

"Art. 3741. Right of enforcement.
A legal mortgage, after judgment on the original obligation has been obtained, a judicial mortgage, or a conventional mortgage may be enforced without reference to any alienation or transfer of the mortgaged property from the original debtor, and the creditor may cause the property to be seized and sold as though it were still owned by the original debtor and in his possession."
[5] The Bank, in supplemental brief, recognizes that its arguments raised in its original brief and oral argument are more properly supportive of an exception of no cause of action than an exception of lis pendens.